UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 09-123-GWU


BRENDA MICHAEL,                                                      PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

Brenda Michael brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?
    If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the

Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

5

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

Brenda Michael filed applications for DIB and SSI on March 9, 2005, alleging she became disabled on May 1, 2002.  (Tr. 205, 210).  These applications were denied initially and upon reconsideration.  (Tr. 179-182).  The claimant pursued administrative remedies.  After a lengthy review process, the Administrative Law Judge (ALJ) concluded that Michael became disabled as of November 11, 2004 as a result of impairments relating to a psychotic disorder, a schizoaffective disorder, and depression.  (Tr. 18, 39).  Prior to this date, Michael was found to have failed to prove that she suffered from a "severe" impairment and, so, was not disabled within the meaning of the Social Security Act.  (Tr. 20, 23).  This decision became final for the administration when the Appeals Council declined review on June 3, 2009.  (Tr. 6-8).  The claimant then filed suit in federal district court seeking judicial review of the unfavorable portion of the administrative decision.

The ALJ noted that the administrative regulations at 20 C.F.R. §§ 404.1508 and 416.908 provide that a "physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only a statement of symptoms." (Tr. 21).  The ALJ observed that 20 C.F.R. §§ 404.1528 and 416.908 indicate that statements alone are not enough to establish the existence of a mental impairment but that there must also be psychiatric signs indicating the specific abnormalities of behavior, affect, thought, memory, orientation, and contact with reality.  (Tr. 21-22).  The ALJ chose November 11,

7

2004 as the onset date because this was the day Michael was first hospitalized at the St. Elizabeth Medical Center for treatment of auditory hallucinations and delusions. (Tr. 20). At that time a psychotic disorder and possible schizoaffective disorder were diagnosed. (Tr. 274). Prior to this date, the ALJ concluded that there was no medical evidence in the record which supported the existence of a mental impairment. (Tr. 22).

Michael argues that the ALJ erred in determining her onset date by failing to properly apply Social Security Ruling (SSR) 83-20. SSR 83-20 describes the evidence relevant to establishing a disability onset date. With regard to disabilities of a non-traumatic origin, the three main factors for consideration are the claimant's allegations, work history and the medical and other evidence. SSR 83-20, p. 3. The Ruling notes that with regard to a slowly progressive impairment, medical evidence is often unavailable. SSR 83-20, p. 4. A great deal of time may have elapsed between the date the claimant left work and the onset of a disabling condition. Id. In such cases, the onset date must be inferred from other evidence such as lay witnesses and an ALJ cannot ignore an earlier onset date solely because an early diagnosis by a medical provider is unavailable. Id.

In the present action, Michael alleges a disability onset date on May 1, 2002. (Tr. 205, 210). This was approximately the time the claimant left work.[1] (Tr. 83).

---

[1]The plaintiff was actually terminated from her job at Gate Safe on May 27, 2002, although she appears to have quit coming to work after receiving a verbal warning to improve her performance. (Tr. 83, 85, 418).

She notes that SSR 83-20 indicates that the day an impairment caused one to leave work can be of great significance in setting the onset date.  SSR 83-20, p. 3.  The record contains no history of medical treatment until the November, 2004 hospitalization at St. Elizabeth.  However, the plaintiff maintains that she left work in May of 2002 due to the disabling affects of her mental condition.  While she did not seek mental health treatment for two and half years, this was a result of her inability to recognize the severity of her own mental problems due to the condition and she should not be penalized for failing to seek treatment.  In Blankenship v. Bowen, 874 F.2d 1116, 1124 the court noted that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  The claimant asserts that SSR 83-20 provides that in situations involving a slowly progressive impairment, where the medical record is insufficient, lay evidence may be obtained to set the onset date.  Michael obtained the testimony of her mother, Dorotha Mitchell (Tr. 433-435), and her sister, Melanie Moore (Tr. 428-433), a registered nurse, which she asserts supports her claim of disability back to May, 2002.  Thus, the plaintiff maintains the ALJ erred by failing to follow the Social Security Ruling.

The court finds that the ALJ acted properly and in conformity with SSR 83-20 in setting November 11, 2004 as the onset date.  While the Ruling allows for lay evidence to be consulted, it states that "the established onset date must be fixed on the facts and can never be inconsistent with the medical evidence of record."  SSR

83-20 p. 4.  The Ruling further states that "the impact of lay evidence on the decision on onset will be limited to the degree it is not contrary to the medical evidence of record."  Id.

In the present action, the ALJ noted that there was no evidence of any mental health treatment prior to November of 2004.  (Tr. 20).  Significantly, the staff at St. Elizabeth, while noting complaints of long-standing mental problems, did not "relate back" the plaintiff's condition to an earlier time period.  (Tr. 271-293).  The claimant began treatment at Northkey Community Care in November of 2004 and the staff also did not "relate back" the mental problems to an earlier time period.  (Tr. 90-148, 294-319).  Dr. Kevin Eggerman examined Michael in March of 2006 and did not indicate that her mental problems dated back to May, 2002.  (Tr. 151-161).  Thus, these medical records from the treating and examining medical sources of record do not provide the type of signs, symptoms and laboratory findings pertinent to the relevant time period to support an earlier onset date.

Psychologist Mary Buban testified as a Medical Expert  at the administrative hearing held on May 3, 2007 to specifically address the issue of the onset date.  Buban stated that while Michael would be considered disabled from May, 2002 if one believed the family testimony, there was no medical evidence in the record to support an onset date between May, 2002 and November, 2004.  (Tr. 437-438).  The expert indicated that an earlier onset date would have to be based on the family testimony and could not be tied to the medical record.  (Tr. 439).  Buban stated that

to pick an earlier onset date would be "totally speculative." (Tr. 441). Therefore, the medical record does not support the plaintiff's claim of an earlier onset date.

Michael cites the aforementioned Blankenship decision in support of her claim of an earlier onset date. In this action, the Sixth Circuit Court of Appeals found that the ALJ had erroneously relied upon the date of the plaintiff's first diagnosis of a mental condition of Listing severity and remanded the action to consider whether an earlier onset date was required. Blankenship, 874 F.2d at 1124. However, the undersigned notes that considerable medical evidence relating to mental health treatment prior to the ALJ's onset date finding was available in the action, with evidence going back to 1980. Blankenship, 874 F.2d at 1123-1124. This is a very different situation from the current action where the claimant has produced absolutely no medical evidence of mental health problems prior to November, 2004. Therefore, Blankenship does not support the plaintiff's claim.

In Willbanks v. Secretary of Health and Human Services, 847 F.2d 301 (6th Cir. 1988), the plaintiff first sought treatment for mental problems in June of 1982 but alleged a disability onset date of January, 1976. The administration found a June, 1982 onset date and the claimant appealed to federal court arguing that SSR 83-20 had not been properly followed. Willbanks, 847 F.2d at 303. The Sixth Circuit Court of Appeals reversed the administrative decision and made a finding that the overall evidence of record supported a January, 1976 onset date. Id. The court cited the plaintiff's testimony, the testimony of his mother, and the opinions of

11

a medical expert and a treating mental health professional as evidence supporting the earlier onset date.  Willbanks, 847 F.2d at 302.  Significantly, both the medical expert and the treating source opined that the claimant's mental problems "related back" to the earlier time frame despite the lack of treatment during this time period. Id.  This is a very different situation from the current action where no such "relating back" by examining medical sources occurred.   No treating or examining medical source has offered so much as a past year Global Assessment of Functioning Rating.  Therefore, the court finds that SSR 83-20 was appropriately applied in the current action.

The lay evidence of record is also not fully supportive of Michael's claim of being disabled as of May, 2002.  The ALJ noted that a statement obtained from the plaintiff's former employer at Gate Safe indicated that she was terminated for failing to report to work after a warning to improve her job performance rather than due to hallucinations.  (Tr. 22, 83-85, 418).  As previously noted, her sister and mother each testified that the claimant suffered from very severe mental problems as of May, 2002 at the May, 2007 hearing.  (Tr. 428-435).  However, the sister previously reported on a Third Party Function Report dated March 23, 2005 that Michael's illness had gotten "much worse" since her home was foreclosed upon in 2003.  (Tr. 234).  The record indicates that the plaintiff continued to live alone until the home foreclosure and she was able to perform home maintenance such as mowing the lawn on the property.  (Tr. 234, 433).  These factors do not indicate a totally

disabling condition.  Therefore, the lay record also does not support the plaintiff's claim of an earlier onset date and the ALJ's finding was reasonable.

The undersigned concludes that the ALJ properly determined that Michael's mental problems became disabling as of November, 2004 and not at an earlier time period.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 19th day of May, 2010.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**